UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BARBARA K.,

                                    Plaintiff,

v.                                                                      5:20-CV-0166
                                                                        (ML)

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____

APPEARANCES:                                            OF COUNSEL:

OLINSKY LAW GROUP                                   HOWARD OLINSKY, ESQ.
  *Counsel for Plaintiff*
250 S. Clinton Street, Suite 210
Syracuse, New York 13202

U.S. SOCIAL SECURITY ADMIN.                      MOLLY E. CARTER, ESQ.
  *Counsel for Defendant*
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

MIROSLAV LOVRIC, United States Magistrate Judge

## MEMORANDUM-DECISION AND ORDER

Plaintiff Barbara K. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g)

seeking judicial review of a final decision of the Commissioner of Social Security ("Defendant"

or "Commissioner") denying her application for Social Security Disability Insurance ("SSDI").

(Dkt. No. 1.)  This case has proceeded in accordance with General Order 18 of this Court which

sets forth the procedures to be followed when appealing a denial of Social Security benefits.

Currently before the Court are Plaintiff's motion for judgment on the pleadings and Defendant's

motion for judgment on the pleadings.  (Dkt. Nos. 9, 10.)  For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is granted, and Defendant's motion for judgment on the pleadings (Dkt. No. 10) is denied.  The Commissioner's decision denying Plaintiff disability benefits is reversed, and the matter is remanded solely for calculation of benefits.

## I.    <u>PROCEDURAL HISTORY</u>

Plaintiff filed an application for SSDI on September 17, 2012, alleging that she became disabled on January 1, 2010, due to osteoarthritis, fibromyalgia, Type II diabetes, diabetic neuropathy, high blood pressure, and severe lower back pain. (Administrative Transcript ("T.") 138-139, 147-152.)  Her application was denied initially on November 7, 2012. (T. 58-66, 74, 80.)  Plaintiff requested a hearing and testified before Administrative Law Judge ("ALJ") Marie Greener on December 30, 2013.  (T. 38-57.)  ALJ Greener issued an unfavorable decision on April 7, 2014.  (T. 23-37.)  The Appeals Council denied Plaintiff's request for review on April 21, 2015.  (T. 1-6.)

On June 16, 2015, Plaintiff commenced an action challenging ALJ Greener's April 7, 2014, decision in the Northern District of New York, Case No. 5:15-CV-0748 (GLS/DEP).  On December 21, 2015, upon the consent of both parties, Senior United States District Judge Gary L. Sharpe issued an order vacating the ALJ's decision and remanding the case for further administration action.  (T. 591-599.)  On April 25, 2016, the Appeals Council remanded the case for further proceedings before ALJ Greener. (T. 600-604.)  In particular, the Appeals Council directed the ALJ to give further consideration to the treating and non-treating medical source opinions, evaluate Plaintiff's need for a cane and the potential impact on Plaintiff's residual

2

functional capacity ("RFC"), and obtain supplemental evidence from a vocational expert ("VE") if warranted.  (T. 602-603.)

While Plaintiff's original claim was pending, she had filed a subsequent claim for SSDI benefits on April 29, 2015.  (T. 711-715.)  The Appeals Council consolidated these claims and directed the ALJ to issue a new decision addressing the consolidated claims. (T. 603.)  On November 16, 2016, ALJ Greener held a hearing at which Plaintiff and VE David A. Festa testified.  (T. 533-575.)  On December 29, 2016, ALJ Greener issued a decision finding that Plaintiff was not disabled at any time from the alleged onset date of January 1, 2010, through the date last insured of December 31, 2014.  (T. 511-532.)

Plaintiff bypassed the Appeals Council and filed suit in the Northern District of New York on March 1, 2017, to challenge ALJ Greener's decision of December 29, 2016, Case No. 5:17-CV-0237 (DEP).  On February 1, 2018, United States Magistrate Judge David A. Peebles ordered that ALJ Greener's decision be vacated, and remanded the case for further administrative action.  (T. 1415-1427.)  Magistrate Judge Peebles explained his reasoning in a decision of January 31, 2018, a transcript of which is included in the record. (T. 1423-1426.)  Magistrate Judge Peebles found that the ALJ failed to adequately consider the nature of Plaintiff's fibromyalgia and neuropathy, and failed to provide substantial evidence for the limited weight assigned to the opinions of Plaintiff's treating sources in contrast to the significant weight assigned to the consultative examiner's opinions.  (T. 1423-1425.)  He also concluded that the ALJ failed to properly account for Plaintiff's lengthy work history in evaluating her hearing testimony, and "grasped" at certain facts that purportedly supported a less restrictive RFC, such as Plaintiff's limited use of a handicapped parking pass and her treating physician's encouragement that she exercise regularly.  (T. 1425-1426.)

3

On April 24, 2019, the Appeals Council vacated ALJ Greener's decision of December 29, 2016, and remanded the case to a different ALJ for further proceedings consistent with Magistrate Judge Peebles' order. (T. 1430-1435.) On December 4, 2019, ALJ David Romeo held a hearing that included testimony from Plaintiff and VE Festa. (T. 1372-1391.) On December 16, 2019, ALJ Romeo issued an unfavorable decision. (T. 1338-1363.) Plaintiff again bypassed the Appeals Council and commenced this proceeding by filing a complaint in the Northern District of New York on February 18, 2020, to challenge ALJ Romeo's decision. (Dkt. No. 1.)

## II.   GENERALLY APPLICABLE LAW

### A.   Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). To facilitate the Court's review, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010) (Kahn, J.); *see also Ferraris v.*

4

*Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153. In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**B.     Standard for Benefits[1]**

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

---

[1]  The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

has lasted or can be expected to last for a continuous period of not less than twelve months."  42

U.S.C. § 1382c(a)(3)(A) (2015).  In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social

Security Administration ("SSA") promulgated regulations establishing a five-step sequential

evaluation process to determine disability.  20 C.F.R. § 416.920(a)(4) (2015).  Under that five-

step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or
> combination of impairments;  (3) whether the impairment meets or
> equals the severity of the specified impairments in the Listing of
> Impairments;  (4) based on a "residual functional capacity"
> assessment, whether the claimant can perform any of his or her
> past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the
> claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or

non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*,

540 U.S. 20, 24 (2003).

### III.   <u>FACTS</u>

At the time of her alleged onset date, Plaintiff was 55 years old.  (T. 138, 1419.)  She was

65 years old at the time of the most recent ALJ decision that is at issue in this case.  (T. 138,

1338-1363.)  Plaintiff is a high school graduate and completed two years of college.  (T. 1419.)
She resides with her husband, and has two adult children. (T. 42, 922, 1419.)

Plaintiff worked for the same employer, a national shipping company, for nearly thirty-six years.  (T. 43, 173.)  During that time, she held a variety of administrative assistant roles.  (T. 43-44, 173.)  Most recently, her responsibilities included reporting and recording-keeping for workers' compensation claims and compliance with federal occupational health and safety regulations.  (T. 43-46.)  Her employment ended in December 2009 when the company consolidated operations and eliminated the location where she worked.  (T. 46-47, 546.)  Plaintiff testified that she was technically a full-time employee up until the facility closure, but that her employer offered her a number of accommodations for her physical impairments in her final few years with the company, including reduced hours, the opportunity to leave early, and the freedom to leave her desk and move around the office.  (T. 44, 549.)  She testified that she would not have been able to continue her employment without such accommodations.  (T. 47-48, 547.)

Plaintiff was diagnosed with fibromyalgia in the 1990s, and by the time of her alleged onset date she was reporting muscle pain "all over," including her back, shoulders, and chest. (T. 419.)  She had Type II diabetes that was controlled with insulin, but developed polyneuropathy that caused pain, tingling, numbness, and reduced sensation in her feet. (T. 192, 393, 1162.)  This condition affected her balance, and she began using a cane and wearing braces on both ankles after several falls. (T. 435, 498, 1162.)  She reported difficulty performing most household chores and depended on her husband for assistance with most daily tasks. (T. 555-556, 1149.)

7

The well-developed record includes Plaintiff's treatment history.  Rather than summarizing the records at the outset, I will refer to the pertinent records during my discussion of Plaintiff's arguments.

## IV.   **THE ALJ'S DECISION**

As an initial matter, the ALJ found that Plaintiff last met the insured status requirements on December 31, 2014.  (T. 1343.)  After finding that Plaintiff did not engage in substantial gainful activity between her alleged onset date of January 1, 2010, through her date last insured, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia, axonal peripheral polyneuropathy, diabetes mellitus type II, and lumbar spine disorder. (T. 1344.)

At step three of the evaluation, the ALJ found that Plaintiff's impairments either singly or in combination did not meet or medically equal the severity of a listed impairment. (T. 1344-1345.)  At step four, the ALJ found that Plaintiff has the RFC to perform less than the full range of sedentary work.[2]  (T. 1345-1353.)  More specifically, the ALJ found that Plaintiff required a cane to ambulate; could not work on slippery, narrow, or uneven surfaces; required the ability to change position from sitting to standing every thirty minutes for three minute periods, but was able to remain on task while standing; could not climb ropes, ladders, or scaffolds; and could not work near moving mechanical parts or high exposed places.  (T. 1345.)  The ALJ found that Plaintiff was capable of occasional operation of foot controls, and could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs.  (*Id.*)

---

[2]      The sedentary level of exertion calls for lifting no more than ten pounds at a time, with only about two hours of standing and/or walking and about six hours sitting out of an eight-hour workday.  *See* Social Security Ruling (SSR) 83-10, *Determining Capability To Do Other Work – The Medical-Vocational Rules of Appendix 2*, 1983 WL 31251 at *5; *see also* 20 C.F.R. §§ 404.1567(a), 416.967(a).

In making the RFC determination, the ALJ stated that he considered all of the Plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529" and Social Security Ruling ("SSR") 16-3p. (*Id*.)  The ALJ further stated that he considered opinion evidence in accordance with 20 C.F.R. § 404.1527. (*Id*.)  The ALJ also found that Plaintiff's statements regarding the extent of her functional limitations were not fully supported by the record evidence. (T. 1346.)

Relying on VE Festa's testimony, the ALJ determined that Plaintiff was able to perform her past relevant work as an administrative assistant. (T. 1353-1354.)  Accordingly, the ALJ determined that Plaintiff was not disabled at any time from January 1, 2010, through December 31, 2014. (T. 1354.)

## V.    <u>ISSUES IN CONTENTION</u>

Plaintiff raises the following arguments in support of her position that the ALJ's decision is not supported by substantial evidence:

1.    The ALJ failed to properly assess the medical opinion evidence. (Dkt. No. 9 at 10-15.)

2.    The ALJ failed to adequately assess Plaintiff's subjective complaints, including her hearing testimony. (Dkt. No. 9 at 15-18.)

Defendant contends that the ALJ's decision is supported by substantial evidence, and that the Commissioner's determination should be affirmed. (Dkt. No. 10 at 5-18.)

For the reasons set forth below, the Court concludes that the ALJ's RFC determination, and his ultimate finding that Plaintiff was not disabled, were not supported by substantial evidence.  In light of the well-developed record and the persuasive evidence of Plaintiff's disability, this court orders a remand solely for calculation of benefits.

9

VI.   **RFC DETERMINATION**

A.   **Legal Standards**

1.   **RFC**

RFC is "what [the] individual can still do despite his or her limitations. . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (citing SSR 96-8p, 1996 WL 374184, at *2).  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, 11-CV-1386, 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (D'Agostino, J.) (citing *Melville*, 198 F.3d at 52 (quoting SSR 96–8p, 1996 WL 374184, at *2)); *accord Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Babcock v. Berryhill*, 17-CV-00580, 2018 WL 4347795, at *13 (N.D.N.Y. Sept. 12, 2018) (Sannes, J.); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016) (Dancks, M.J.).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945; *see Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted) ("When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record."); *Kirah D. v. Berryhill*, 18-CV-0110, 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019) (Hummel, M.J.) ("When evaluating a claim seeking disability benefits, factors to be considered by the ALJ include objective medical facts, clinical findings, the treating

physician's diagnoses, subjective evidence of disability, and pain related by the claimant.");

*Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (Hurd, J.) (citing *LaPorta v. Bowen*,

737 F. Supp. 180, 183 (N.D.N.Y. 1990) (McAvoy, J.)) ("In assessing RFC, the ALJ's findings

must specify the functions plaintiff is capable of performing, conclusory statements regarding

plaintiff's capacities are not sufficient.").  An ALJ must specify the functions a plaintiff is

capable of performing, and may not simply make conclusory statements regarding a plaintiff's

capacities.  *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010) (Kahn, J.); *accord*

*Stephens,* 200 F. Supp. 3d at 361; *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440

(N.D.N.Y. 2004) (Sharpe, J.)*; Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728

F.2d 582, 588 (2d Cir. 1984); *LaPorta*, 737 F. Supp. at 183).  The RFC assessment must also

include a narrative discussion, describing how the evidence supports the ALJ's conclusions,

citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, 17-CV-01266,

2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (Dancks, M.J.) (citing SSR 96-8p, 1996

WL 374184, at *7).

## 2.    **Evaluating Medical Evidence**

Pursuant to the "treating physician rule"[3] set out in 20 C.F.R. § 404.1527(c), "the opinion

of a claimant's treating physician as to the nature and severity of the impairment is given

---

[3]    For claims filed on or after March 27, 2017, a new set of regulations apply. These new regulations do "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 416.920c(a).  But since Plaintiff filed her consolidated claims on September 17, 2012, and April 29, 2015, the treating physician rule applies.  *See Claudio v. Berryhill*, 17-CV-1228, 2018 WL 3455409 at *3 n.2 (D. Conn. July 18, 2018) ("Since [the plaintiff] filed her claim before March 27, 2017, I apply the treating physician rule under the earlier regulations.").

'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).   However, "the opinion of the treating physician is not afforded controlling weight where ... the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

In deciding how much weight to afford the opinion of a treating physician, the ALJ must "'explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).   However, where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. § 404.1527 is required.  *Atwater v. Astrue*, 512 F. App'x. 67, 70 (2d Cir. 2013) (citing *Halloran v. Barnhart*, 362 F.3d at 31-32).   The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant.  20 C.F.R. §§ 404.1527(c)(1)-(6).

### 3.   Evaluation of Symptoms

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account.  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  The ALJ must carefully consider all the evidence presented by claimants

regarding their symptoms, which fall into seven relevant factors including daily activities and the location, duration, frequency, and intensity of their pain or other symptoms. *Del Carmen Fernandez v. Berryhill*, 18-CV-0326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); Social Security Ruling (SSR) 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

   In 2016, the Commissioner eliminated the use of term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use that term.  SSR 16-3p, 81 FR at 14167.  Instead, symptom evaluation tracks the language of the regulations.  The evaluation of symptoms involves a two-step process.  First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ."  20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

   If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'"  *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing *inter alia* 20 C.F.R. § 404.1529(a); *Genier*, 606 F.3d at 49) (alterations in original).

   If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must consider the other evidence.  *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing superseded SSR 96-7p).  The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3)

13

precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ must provide specific reasons for the determination.  *Cichocki*, 534 F. App'x at 76.  However, the failure to specifically reference a particular relevant factor does not undermine the ALJ's assessment as long as there is substantial evidence supporting the determination.  *Id.*; see *also Del Carmen Fernandez*, 2019 WL 667743 at *11 (citing *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 744 (S.D.N.Y. 2018)).  "[R]emand is not required where 'the evidence of record allows the court to glean the rationale of an ALJ's decision.'"  *Cichocki*, 534 F. App'x at 76 (quoting *Mongeur v. Heckler*, 722 F.2d at 1040).

### B.  Plaintiff's Physical Functional Limitations

As noted above, the ALJ found that Plaintiff could perform less than the full range of sedentary work, but retained the RFC to perform her prior work as an administrative assistant. (T. 1345-1354.)  Plaintiff argues that the ALJ did not properly evaluate the medical and testimonial evidence regarding Plaintiff's physical impairments, particularly the evidence related to Plaintiff's pain and the resulting limitations on her ability to sit for extended tasks and remain on task during the workday.  (Dkt. No. 9 at 10-18.)  This Court agrees, and finds that the ALJ's errors in evaluating the treating source opinions, the objective medical evidence, and plaintiff's subjective testimony resulted in an RFC determination that was not supported by substantial evidence, as explained below.

### 1.    Primary Care Physician Dr. James Augustine's Opinions

There are a number of medical opinions in the record from Plaintiff's primary care physician, Dr. James T. Augustine.  (T. 428-430, 795-798, 1332-1337, 1819-1822.)  On December 4, 2013, Dr. Augustine completed a Medical Source Statement, listing Plaintiff's diagnosis as diabetes with neurological manifestations, and noted that he saw Plaintiff for regular appointments every three months.  (T. 428.)  He described Plaintiff's symptoms as back pain and neuropathy that resulted in a lack of feeling in her feet and caused her to fall.  (*Id.*)

Based on his experience treating Plaintiff's physical impairments, Dr. Augustine opined that Plaintiff could sit for only thirty minutes at one time, for a total of about two hours per day.  (T. 428-429.)  He also opined that Plaintiff could stand for approximately thirty minutes at one time, and stand or walk for a total of about two hours each day.  (T. 428-429.)  He noted that Plaintiff required both a cane and leg braces.  (T. 429.)  With regard to lifting and carrying, Dr. Augustine opined that Plaintiff could never lift or carry items weighing ten pounds or greater and could only rarely lift or carry items weighing less than ten pounds.  (T. 429.)  With regard to other postural limitations, Dr. Augustine opined that Plaintiff could never twist, stoop, bend, crouch, squat, or climb ladders or stairs.  (*Id.*)  He also opined that Plaintiff could rarely use her hands to grasp, turn or twist objects, perform fine manipulation with her fingers, or reach with her arms.  (*Id.*)

In Dr. Augustine's opinion, Plaintiff would be off task for more than twenty percent of the workday and would likely miss more than four days per month due to her physical impairments.  (T. 430.)  He gave Plaintiff an overall prognosis of "unclear, but declining."  (T. 428.)

Dr. Augustine completed another Medical Source Statement on August 28, 2014.  (T. 795-798.)  He again indicated that he saw Plaintiff approximately every three months.  (T. 795.) Focusing on Plaintiff's diagnosed fibromyalgia, Dr. Augustine listed Plaintiff's symptoms as multiple tender points, chronic fatigue, muscle weakness, and numbness and tingling.  (*Id.*)  He described Plaintiff as having severe pain throughout her body on a daily basis, including in her lumbosacral spine, thoracic spine, shoulders, hands, fingers, arms, legs, knees, ankles, and feet. (T. 796.)   He also identified a number of factors that precipitated Plaintiff's pain including changing weather, fatigue, movement, overuse, cold temperatures, and remaining in a static position.  (*Id.*)

Based on his treatment experience with Plaintiff, Dr. Augustine's opinion of Plaintiff's physical limitations mirrored his findings in December 2013. (T. 796-797.)  He opined that Plaintiff could only sit for thirty minutes at one time, for a total of about two hours during the workday.  (T. 796.)  He also opined that Plaintiff could stand for thirty minutes at one time, and stand or walk for about two hours total over the course of a workday.  (*Id*.)  He repeated his opinion that Plaintiff required a cane for even occasional standing or walking.  (*Id.*)  He also opined that Plaintiff could rarely lift items less than ten pounds, and never lift heavier weights. (T. 797.)

Dr. Augustine again opined that Plaintiff could rarely use her hands to grasp, turn, or twist objects, perform fine manipulation with her fingers, or reach with her arms.  (*Id*.)  He opined that Plaintiff would be off task for more than twenty percent of the workday and was likely to miss more than four days of work per month.  (T. 798.)  In response to the question of whether Plaintiff's impairments were likely to produce good and bad days, Dr. Augustine wrote, "bad to worse days."  (*Id*.)

16

On November 18, 2016, Dr. Augustine completed another Medical Source Statement. (T. 1332-1335.)  He noted that he had seen Plaintiff four times per year since 1999, and in his opinion, Plaintiff's condition was declining.  (T. 1332.)  As before, he listed Plaintiff's diagnosed impairments as Type II diabetes with neurological manifestations, including polyneuropathy. (*Id.*)  He described Plaintiff's diabetes as uncontrolled.  (*Id.*)  He described Plaintiff's symptoms as fatigue, difficulty walking, excessive thirst, general malaise, muscle weakness, extremity pain and numbness, and dizziness and loss of balance.  (*Id.*)  He also identified specific symptoms related to Plaintiff's neuropathy, including loss of sensation, gross or fine motor difficulties, weakness in the arms and legs, difficulty walking or climbing stairs, and an impaired sense of position and balance.  (T. 1333.)

Addressing Plaintiff's functional limitations, Dr. Augustine offered a more restrictive opinion than his previous reports.  (T. 1333-1334.)  He opined that Plaintiff could sit or stand for thirty minutes at one time, but found that Plaintiff could only sit for a total of *less* than two hours, and stand or walk for *less* than two hours.  (T. 1333.)  His opinion regarding Plaintiff's other limitations was unchanged, as he again found that Plaintiff could rarely lift or carry less than ten pounds, and could never lift or carry heavier weights.  (T. 1334.)  In Dr. Augustine's opinion, Plaintiff could only occasionally look down, turn her head right or left, look up, and hold her head in a static position.  (*Id.*)  He found that she could rarely use her hands to grasp, turn or twist objects, perform fine manipulations with her fingers, and reach with her arms.  (T. 1335.)  Finally, Dr. Augustine opined that Plaintiff would be off task more than twenty percent of the time and was likely to be absent from work more than four days per month.  (*Id.*)

The final opinion in the record from Dr. Augustine is dated May 8, 2019.  (T. 1819-1822.)  He again summarized his treatment relationship as an examination every three to four

months since 1999, and listed her diagnosis as Type II diabetes with neuropathy and neurological

manifestations.  (T. 1819.)  He listed Plaintiff's symptoms as fatigue, difficulty walking, episodic

vision blurriness, swelling, general malaise, muscle weakness, extremity pain and numbness, loss

of manual dexterity, difficulty thinking and concentrating, dizziness and loss of balance,

hyper/hypoglycemic attacks, and fibromyalgia.  (*Id.*)  He described Plaintiff as weak and off

balance.  (*Id.*)

Summarizing the symptoms associated with Plaintiff's neuropathy, Dr. Augustine listed

loss of sensation, abnormal gait, gross or fine motor difficulties, weakness in the arms and legs,

difficulty walking, running, and climbing stairs, and impaired sense of position, and balance.  (T.

1820.)  He also described severe pain in Plaintiff's arms, legs, and feet.  (*Id.*)  Based on these

symptoms and his experience with Plaintiff, Dr. Augustine offered an opinion similar to his

earlier reports.  (T. 1820-1821.)  He opined that Plaintiff could only sit for thirty minutes at one

time, and could only stand for thirty minutes at one time.  (T. 1820.)  He opined that plaintiff

could sit for about two hours total during the workday, and stand or walk for a total of about two

hours over the course of a workday "as able."  (*Id.*)

Dr. Augustine noted that Plaintiff still required the use of a cane and leg braces, and

opined that her legs should be elevated at a forty-five degree angle when sitting for prolonged

periods.  (T. 1821.)  He again opined that Plaintiff could rarely lift items less than ten pounds and

could never lift heavier weights.  (*Id.*)  He opined that Plaintiff could never twist, stoop, bend,

crouch, squat, climb ladders, and only rarely climb stairs, if necessary to enter or exit a building.

(T. 1821.)  He also opined that Plaintiff would be off task more than twenty percent of the time

and was likely to be absent for work more than four days per month.  (T. 1822.)  He also found

that Plaintiff could rarely use her hands to grasp, turn, or twist objects, could rarely use her fingers for fine manipulation, and could rarely reach with her arms.  (*Id.*)

The ALJ assigned Dr. Augustine's opinions "at most partial evidentiary weight."  (T. 1347.)  He specifically discounted the treating physician's opinion that Plaintiff could only sit for approximately two hours total over the course of a workday, could rarely lift or carry less than ten pounds, and could never engage in postural activities such as twisting, stooping, bending, crouching, and squatting.  (T. 429, 1334, 1347.)  The ALJ gave greater weight to Dr. Augustine's opinion dated December 4, 2013, that Plaintiff could stand or walk for a total of two hours during the workday, because he found it consistent with the record evidence.  (T. 429, 1348.)  The ALJ rejected Dr. Augustine's opinion that Plaintiff's impairments would cause her to be off task more than twenty percent of the workday, and absent from work more than four days per month.  (T. 430, 1335, 1348.)  He found these conclusions to be speculative due to a lack of objective evidence of concentration deficits or frequent absences from medical appointments.  (T. 430, 1335, 1348.)  In addition to a perceived conflict with Dr. Augustine's own treatment notes, the ALJ relied on two other factors to reach these conclusions: Dr. Augustine's lack of expertise with the Social Security Disability program, and the treating physician's likely unfamiliarity with the broader administrative record.  (T. 1348.)  Based on this analysis, the ALJ attempted to account for Dr. Augustine's opinions in his RFC determination by restricting Plaintiff to sedentary work with a sit/stand option, postural restrictions, and use of a cane.  (*Id.*)

### 2.     Treating Podiatrist Dr.  Lynda Kreitzer

Dr. Lynda Kreitzer, Plaintiff's podiatrist, prepared a Medical Source Statement on November 16, 2013.  (T. 507-509.)  She noted that she had treated Plaintiff since August 2010, and listed her diagnosed impairments as diabetic neuropathy, sensory and motion deficits,

fibromyalgia, musculoskeletal symptoms, spinal stenosis, and cavus foot deformity.  (T. 507.)

Dr. Kreitzer listed Plaintiff's symptoms as sensory and motor loss, muscular imbalance, chronic

pain and instability, ankle weakness and instability, abnormal gait, and paresthesia.  (*Id.*)  Dr.

Kreitzer opined that Plaintiff's foot impairment caused her difficulty with ambulating and

keeping her balance.  (*Id.*)  To address these problems, Dr. Kreitzer prescribed ankle braces to

improve Plaintiff's balance, and prescribed her a walker to improve Plaintiff's stability and

mobility.  (T. 507, 1320.)

 With regard to Plaintiff's functional limitations, Dr. Kreitzer opined that Plaintiff could

sit for forty-five minutes at one time, and stand for ten minutes at one time.  (T. 508.)  Over the

course of the workday, Dr. Kreizer estimated that Plaintiff could sit for a total of about two

hours, and could stand or walk for less than two hours total.  (*Id.*)  She also opined that Plaintiff

could rarely lift items less than ten pounds, but could never lift heavier weights.  (*Id.*)  She

further opined that Plaintiff could only occasionally use her hands to grasp, turn, and twist

objects, could occasionally use her fingers for fine manipulation, and could occasionally reach

with her arms.  (T. 509.)

 In Dr. Kreitzer's opinion, Plaintiff would be off task more than twenty percent of the

workday and was likely to be absent from work about four days per month, due to her physical

impairments.  (*Id.*)  She also estimated that Plaintiff would need to take five unscheduled breaks

per day, lasting an average of fifteen minutes.  (*Id.*)

 The ALJ assigned "partial" evidentiary weight to Dr. Kreitzer's opinion, but found it less

reliable than Dr. Augustine's opinion.  (T. 1347-1348.)  As with Dr. Augustine, the ALJ found

that the record did not support Dr. Kreitzer's opinion regarding Plaintiff's limitations with regard

to sitting for extended periods, lifting, carrying, engaging in postural activities such as twisting

and bending, remaining on task, or maintaining regular work attendance. (T. 508-509, 1347.)

He also rejected Dr. Kreitzer's conclusion that Plaintiff could not stand or walk for a total of two

hours during the workday, as unsupported by the record. (T. 508, 1347.) In addition to a

perceived inconsistency with Dr. Kreitzer's own progress notes and the broader treatment record,

the ALJ discounted Dr. Kreitzer's opinion because some of Plaintiff's impairments, such as back

pain and fibromyalgia, were outside the treating podiatrist's area of expertise. (T. 1347-1348.)

Again, the ALJ incorporated these findings into the RFC determination by limiting Plaintiff to

sedentary work with a sit/stand option, and use of a cane. (T. 1348.)

### 3.    Treating Rheumatologist Dr. Patrick Riccardi

On November 10, 2016, rheumatologist Dr. Patrick Riccardi co-signed a Medical Source

Statement prepared by his physician's assistant, Sherri Spink-Palmieri. (T. 1313-1316.) The

form indicated that Plaintiff was first seen at his office in the 1990s. (T. 1313.) He identified

Plaintiff's symptoms as multiple tender points, chronic fatigue, morning stiffness, muscle

weakness, numbness, and tingling. (*Id.*) Dr. Riccardi's office did not perform the necessary

examinations to opine on Plaintiff's functional limitations, so the form only reflected Plaintiff's

description of her symptoms. (T. 1314.) This included being able to sit for only fifteen minutes

at one time before needing to get up, and being able to stand for the same duration before

needing to change positions. (*Id.*) Regarding the ability to sit, stand, or walk over the course of

the workday, Plaintiff reported being able to sit for less than two hours, and being able to walk or

stand for less than two hours. (*Id.*) Plaintiff reported that she would also require an opportunity

to shift positions at will from sitting, standing or walking, and an accommodation to take

multiple unscheduled breaks during the day. (T. 1314-1315.) Based solely on Plaintiff's reports,

Dr. Riccardi opined that she would be off task more than twenty percent of the time and would likely be absent from work about two days per month.  (T. 1316.)

When a treating physician signs a report prepared by a nurse practitioner or physician's assistant, the report should be evaluated under the treating physician rule unless evidence indicates that the report does not reflect the doctor's views.  *See Djuzo v. Comm'r of Soc. Sec.*, 13-CV-0272, 2014 WL 5823104 at *4 (N.D.N.Y. Nov. 7, 2014) (Sharpe, C.J.) (collecting cases). The ALJ assigned Dr. Riccardi's opinion limited weight. (T. 1349.)  He noted that although Dr. Riccardi had treated Plaintiff in the 1990s, there was a significant gap in the treatment relationship.  (T. 1349.)  Although the end of their initial treatment relationship was unclear, the record indicated that Plaintiff was not receiving treatment from Dr. Riccardi in 2012, and Dr. Riccardi's notes indicate that the treatment relationship resumed in June 2015, after the date last insured.  (T. 1143, 1302, 1349.)  The ALJ recognized that this gap in treatment impacted the relevance of Dr. Riccardi's opinion to his RFC determination concerning the period between January 1, 2010, and December 31, 2014.  (T. 1349.)  However, the ALJ found the rheumatologist's description of Plaintiff's more recent fibromyalgia symptoms suggestive of a deterioration that began after Plaintiff's date last insured.  (*Id*.)

### 4.    Consultative Examiner Dr. Kalyani Ganesh's Opinion

In reaching the RFC determination, the ALJ assigned "limited weight" to two opinions from Dr. Kalyani Ganesh, who performed consultative examinations of Plaintiff on October 16, 2012, and September 2, 2016. (T. 419-422, 1148-1157, 1349.)  Before the examination on October 15, 2012, Plaintiff reported that she had been diagnosed with fibromyalgia in the early 1990s, and received treatment for osteoarthritis of the upper back, diabetes, diabetes neuropathy, high blood pressure, and high cholesterol.  (T. 419.)  She described pain in her lower back that

radiated into her hips, upper back, shoulders, and chest, and fibromyalgia pain that was "all over in all the muscles." (*Id.*) She also experienced sharp pain in her feet and legs as a result of her neuropathy. (*Id.*)

During the 2012 consultative examination, Plaintiff appeared in no acute distress, and demonstrated a normal gait despite an inability to walk on her heels and toes. (T. 420.) This normal gait continued with or without the cane, leading Dr. Ganesh to conclude that it was used on an as-needed basis. (*Id.*) Plaintiff's cervical spine showed full flexion, full extension, full lateral flexion bilaterally, and full rotary movement bilaterally. (T. 421.) Her lumbar spine showed reduced flexion, extension, lateral flexion, and rotary movement. (*Id.*)

Plaintiff demonstrated full range of motion in her shoulders, elbows, forearms, and wrists bilaterally, as well as full range of motion in her lower extremities bilaterally. (*Id.*) She demonstrated full strength in her shoulders, arms, hips, and legs bilaterally, as well as intact hand and finger dexterity with full grip strength. (*Id.*)

Based on this examination, Dr. Ganesh opined that Plaintiff had no limitations with regard to sitting, standing, walking, or use of her upper extremities. (T. 422.) She further opined that she had "mild to moderate" limitations in walking and climbing. (*Id.*) She gave Plaintiff a stable but guarded prognosis. (*Id.*)

At Plaintiff's second consultative examination with Dr. Ganesh on September 2, 2016, Plaintiff reported that her diabetes was not currently under control but denied any complications except for diabetic neuropathy that left her with no feeling in her toes. (T. 1148.) She reported balance problems that required her to wear braces on both feet. (*Id.*) Plaintiff also reported chronic pain in her shoulder, neck, wrist, and hands that was attributable to osteoarthritis and fibromyalgia. (*Id.*)

During the 2016 examination, Dr. Ganesh observed that Plaintiff was in no acute distress, with a normal gait despite an inability to walk on heels and toes. (T. 1149.) Plaintiff used her cane and wore her leg braces during the examination, and needed no help changing for the examination, getting on and off the examination table, or rising from a chair. (*Id.*) Plaintiff demonstrated no limitations in the cervical spine but reduced flexion, extension, and rotation in the lumbar spine. (T. 1150.) Plaintiff displayed full range of motion in her shoulders, elbows, forearms, wrists, hips, and knees bilaterally. (*Id.*) Dr. Ganesh did not observe Plaintiff's ankle range of motion due to the braces. (*Id.*) She found full strength in Plaintiff's upper and lower extremities, intact hand and finger dexterity, and full grip strength in both hands. (*Id.*) Dr. Ganesh detected some decrease in sensation but did not perform a full neurological examination. (*Id*.) In evaluating Plaintiff's fibromyalgia, Dr. Ganesh found no tender points or control points. (*Id.*)

In her narrative report, Dr. Ganesh opined that Plaintiff had no limitations with regard to sitting or the use of her upper extremities, and had mild limitations with regard to standing, walking, and climbing. (T. 1151.) She also completed a check-box medical source statement that provided additional detail. (T. 1152-1157.) On this form, Dr. Ganesh opined that Plaintiff could lift and carry up to one hundred pounds on a continuous (over two-thirds of the workday) basis, could stand and walk for up to six hours at one time without interruption, and could sit for a total of eight hours per workday. (T. 1152-1153.) She noted on the form that Plaintiff used a cane but opined that the assistive device was not absolutely necessary. (T. 1153.)

The ALJ assigned "limited weight" to each of Dr. Ganesh's opinions. (T. 1349.) Although the ALJ found that the opinions were generally supported by the respective consultative examination results, he concluded that the minimal limitations described therein

24

conflicted with the majority of the opinion evidence in the record and failed to adequately

account for Plaintiff's subjective complaints.  (*Id*.)  In addition, the ALJ noted that Dr. Ganesh's

2016 examination and accompanying opinion were conducted almost two years after the date last

insured, and thus had little probative value to the relevant period.  (*Id*.)

C. **Plaintiff's Testimony**

Plaintiff testified regarding her work history, functional limitations, and treatment

regimen over the course of three administrative hearings since 2013.  (T. 38-52, 535-566, 1372-

1384.)  She described receiving treatment for fibromyalgia since the 1990s.  (T. 550.)  She

stopped seeing her rheumatologist, Dr. Riccardi, after her employer's health insurance plan

changed.  (T. 550-551.)  Her primary care physician, Dr. Augustine, then took over most of

Plaintiff's treatment for fibromyalgia and neuropathy, although she also received specialized care

from her podiatrist and neurologist.  (T. 552-553.)

Plaintiff testified that she had not worked since her former employer ceased operations at

the end of 2009.  (T. 47, 543.)  She also testified that her physical symptoms had become

difficult to manage approximately two years before the end of her employment, particularly

fatigue and body aches.  (T. 549.)  Plaintiff testified that she likely would have stopped working

earlier, but her employer allowed her significant accommodations in light of her experience and

the impending closure of the facility, which would have made it difficult to hire and train an

adequate replacement.  (T. 44, 546-547.)  These accommodations included freedom to move

around and change positions, reduced work hours, and authorization to leave early when she was

not feeling well.  (T. 44, 46, 544-546, 549.)  Plaintiff testified that her condition had deteriorated

since her alleged onset date of January 1, 2010.  (T. 47-48, 542, 1379, 1383.)  During that time,

she had been prescribed a number of mobility and balance aids, progressing from a traditional

cane, to a four-pronged or "quad" cane, and to a mobility walker, as well as braces for both ankles. (T. 552-554.)  Plaintiff testified that she no longer drove due to a lack of sensation in her feet and became increasingly dependent on her husband for household tasks. (T. 48, 52.)

> **D.    The ALJ's RFC Determination Fails to Comply with the Remand Order and Is Not Supported by Substantial Evidence.**

The Order of the Appeals Council dated April 24, 2019, vacated the Commissioner's previous decision and remanded this case to the ALJ for further proceedings consistent with Magistrate Judge Peebles' order of February 1, 2018. (T. 1370, 1415-1417.)  In Judge Peebles' decision of January 31, 2018, that accompanied that order, Judge Peebles directed the Commissioner to properly apply the treating physician rule, properly consider the nature of Plaintiff's fibromyalgia, and evaluate Plaintiff's subjective description of her symptoms in light of both the treatment record and her lengthy work history.  (T. 1423-1426.)  The ALJ's decision certainly touches on each of those issues, and specifically references Judge Peebles' order.  (T. 1346, 1350.)  However, the ALJ's conclusions with regard to each of these issues are not supported by substantial evidence.

As an initial matter, the ALJ did not "explicitly consider . . . the frequency, length, nature, and extent of treatment" that Plaintiff had with either Dr. Augustine or Dr. Kreitzer, as is required when determining whether a treating physician's opinion will be given anything less than controlling weight.  *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (other citations omitted).  In his evaluation of the opinions of Dr. Augustine and Dr. Kreitzer, the ALJ mentioned their status as treating physicians.  (T. 1347.)  However, "merely acknowledging the existence of treatment relationships is not the same as explicitly considering "the frequency, length, nature,

and extent of treatment," as required by the treating physician rule.[4]  *Ferraro v. Saul*, 806 F. App'x 13, 16 (2d Cir. 2020).  "Indeed, the Second Circuit made clear in *Ferraro* that the explicit consideration of the various factors of the treating relationship is of particular concern where the relationship involves numerous visits, over a stretch of years, wherein the physician is continuously developing and monitoring the individual's treatment plans."  *Daniels v. Comm'r of Soc. Sec*, 19-CV-6788, 2020 WL 6253304, at *3 (W.D.N.Y. Oct. 23, 2020).  This is "precisely the type of circumstance in which the Second Circuit has made clear explicit discussion of the frequency, length, nature, and extent of the treatment is required by the ALJ."  *Daniels*, 2020 WL 6253304, at *3 (citing *Ferraro*, 806 F. App'x at 15).

As of the date last insured, Dr. Augustine had been Plaintiff's primary care physician since 1999 and had seen her for regular appointments every three months.  (T. 428, 1819.)  When Plaintiff's insurance no longer covered treatment with Dr. Riccardi, Dr. Augustine assumed responsibility for Plaintiff's fibromyalgia treatment.  (T. 550, 882.)  Dr. Augustine also referred Plaintiff to specialists, including a neurologist, and was provided with the consultation notes of the neurologist.  (T. 1160.)

Similarly, Dr. Kreitzer had been Plaintiff's podiatrist for more than three years at the time of her opinion dated November 16, 2013. (T. 388, 507.)  Over the course of her treatment, Dr. Kreitzer recommended or prescribed the use of ankle braces, a quad cane, and a mobility walker as Plaintiff's physical limitations increased.  (T. 436, 493, 507, 1319-1320.)

---

[4]     The failure to comply with the formal terms of the treating physician rule can be excused if a "searching review of the record" assures the court that the substance of the rule is satisfied. *Ferraro*, 806 F. App'x at 15.  As set forth in this decision, this Court's review of the record provides no such assurance.

Nevertheless, the ALJ failed to explicitly consider or discuss any of these factors in deciding the weight to apply to the opinions of either Dr. Augustine or Dr. Kreitzer. This is "clear error and contrary to the well-established considerations to be made when an ALJ decides not to give a treating physician's opinion controlling weight." *Daniels*, 2020 WL 6253304, at *3; *see also* 20 C.F.R. § 404.1527(c)(2)(i), ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."); *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion and we will continue remanding when we encounter opinions from [ALJs] that do not comprehensively set forth reasons for the weight assigned . . .").

The ALJ's failure to properly apply the treating physician rule is compounded by the lack of any other reliable medical opinion evidence for the period between Plaintiff's alleged onset date and the date last insured. The only other medical opinion from that period is Dr. Ganesh's consultative report from October 2012. (T. 419-422.) The ALJ appropriately assigned limited weight to this opinion, as Dr. Ganesh's opinion that Plaintiff had no limitation with regard to sitting, standing, walking or using her upper extremities bears no rational connection to the administrative record. (T. 422.)

It is true that an ALJ's decision need not "perfectly correspond with any of the medical sources cited," and that he is "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013). Likewise, "it is not per se error for an ALJ to make the RFC determination absent a medical opinion" where "the record contains sufficient evidence from which an ALJ can

assess the petitioner's residual functional capacity." *Lewis v. Colvin*, 13-CV-1072S, 2014 WL 6609637, at *6 (W.D.N.Y. Nov. 20, 2014) (citation omitted).  However, in this case, the ALJ never adequately explained the substantial evidence that purportedly supported his conclusion that Plaintiff could meet the physical requirements of sedentary labor, despite the conclusions of Plaintiff's treating physicians. *See Wilson v. Comm'r of Soc. Sec.,* 16-CV-0077, 2017 WL 1194229, at *4 (N.D.N.Y. March 30, 2017) (Mordue, J.) ("To be clear, the Court is not suggesting that the ALJ is required to assign greater weight to [the examining physician's] opinion on remand, so long as it is clear why the opinion is given the weight it is given, and that the decision is supported by substantial evidence.").  His limited and inconsistent reliance on the objective medical record suggests that the ALJ relied upon his own lay interpretation of Plaintiff's physical examinations and other clinical data.  *See Duncan v. Comm'r of Soc. Sec.*, 18-CV-0369, 2020 WL 1131219, at *2 (W.D.N.Y. Mar. 9, 2020) (internal quotation marks and brackets omitted) (". . . an ALJ's ability to make inferences about the functional limitations caused by an impairment does not extend beyond that of an ordinary layperson.  While an ALJ may render common sense judgments about functional capacity, she must avoid the temptation to play doctor.").

For example, the ALJ found that Dr. Augustine's physical examination notes do "not consistently document tender points or trigger points consistent with fibromyalgia."[5]  (T. 1347.) He also cited Dr. Ganesh's consultative examination of October 16, 2012, finding that Plaintiff

---

[5]     The court reviewed the treatment notes from Dr. Augustine that the ALJ cited in support of this conclusion.  (T. 190, 234, 297, 463, 877, 886, 893, 897.)  Unlike Dr. Ganesh's definitive finding that Plaintiff had "zero" tender points or control points, the treating physician's notes do not mention tender points or control points at all, so it is unclear whether he evaluated Plaintiff's fibromyalgia during these visits.

showed "[z]ero tender points and zero control points." (T. 421, 1347.) This is precisely the approach to fibromyalgia that numerous courts, including Judge Peebles in his decision of January 31, 2018, have warned against. (T. 1424.) The Second Circuit has recognized that "[i]n stark contrast to the unremitting pain of which fibrositis patients complain, physical examinations will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." *See Green-Younger v. Barnhart*, 335 F.3d 99, 108-109 (2d Cir. 2003) (quoting *Lisa v. Sec. of Dep't of Health and Human Svcs.*, 940 F.2d 40, 45 (2d Cir. 1991)). "Hence the absence of swelling joints or other orthopedic and neurologic deficits 'is no more indicative that the patient's fibromyalgia is not disabling than the absence of a headache is an indication that a patient's prostate cancer is not advanced.'" *Green-Younger*, 335 F.3d at 109 (quoting *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)).

The ALJ's rejection of the conclusion of both Dr. Augustine and Dr. Kreitzer's opinion that pain from Plaintiff's physical impairments would cause her to be off task suffers from a similar defect. (T. 1345, 1348.) The ALJ rejected the treating physicians' opinions on this issue as "speculative and not based on any objective findings," but never explained how he concluded that Plaintiff could manage to remain on task despite requiring a change in position from sitting to standing every thirty minutes. (T. 1345.) This omission is significant, because VE Festa testified that most employers would not tolerate an individual who was off task ten percent or more of the workday. (T. 1387-1388.) That error alone merits remand. *See, e.g., Robert S. v. Comm'r of Soc. Sec.*, 18-CV-0357, 2019 WL 4463497, at *9-10 (N.D.N.Y. Sept. 18, 2019) (Baxter, M.J.) (the uncontradicted medical opinion from multiple treating providers that plaintiff would be off task more than would be tolerated by employers (according to the VE), could not be overcome by the ALJ's critique of the opinion evidence unless the contrary evidence was

30

"overwhelmingly compelling"); *Avers v. Berryhill*,  17-CV-0532SR, 2019 WL 2295398, at *3-4 (W.D.N.Y. May 30, 2019) (given the opinions of treating and examining doctors that plaintiff would be off task more than 25% of a workday and would be moderately limited in his ability to maintain attention and concentration, perform activities within a schedule, and maintain regular attendance, there was no evidence in the record upon which the ALJ could base his determination that plaintiff would be able to meet the attendance and concentration standards of the positions identified by the vocational expert); *Rowling v. Colvin*, 16-CV-6577, 2018 WL 1151106, at *8 (W.D.N.Y. Mar. 5, 2018) (the vocational expert testified that, if plaintiff were off task about 20% of the time due to impaired concentration, no jobs would be available, and the record—which indicated primarily "moderate" limitations in concentration—did not contain substantial evidence to support the ALJ's conclusion that Plaintiff was not disabled); *Bruner v. Colvin*, 16-CV-6735, 2017 WL 4215942, at *3, 5 (W.D.N.Y. Sept. 22, 2017) (based on treating physician's opinion that plaintiff would be off task 30% of the workweek, the examining consulting psychologist's statement that plaintiff "has difficulty with a regular schedule, due to anxiety," and the non-examining psychologist's statement that plaintiff is moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, the court found that the ALJ's determination that plaintiff would not be off task 20% of the time was unsupported by substantial evidence in the record).

In his decision of January 31, 2018, Judge Peebles found that the ALJ "grasped" at weak or incomplete evidence to counter Plaintiff's testimony regarding her functional limitations.  (T. 1425-1426.)  The Commissioner's decision in this case suffers from a similar grasping.  For example, the ALJ discounted Plaintiff's description of frequent widespread and debilitating

31

fibromyalgia pain by noting that "[p]rogress notes indicated that [Plaintiff] was only taking ibuprofen for her fibromyalgia pain, which she advised was beneficial." (T. 830, 1350.) The ALJ ignored the very next line of that progress note, which states that Plaintiff also took "gabapentin for neuropathy, but helps this too," in reference to her fibromyalgia. (T. 830.) Furthermore, Plaintiff testified at her first administrative hearing that she took gabapentin to help with sleep, but that her neurologist advised her that it would help her fibromyalgia as well. (T. 50.) Indeed, gabapentin, a prescription medication, is often used to address fibromyalgia symptoms. *See Natasha D. v. Comm'r of Soc. Sec.*, 19-CV-0515, 2020 WL 1862966, at \*2 n.7 (N.D.N.Y. Apr. 13, 2020) (Baxter, M.J.) ("Gabapentin is an anti-epileptic drug that is often prescribed for adults with fibromyalgia pain.") (citation omitted); *Poler v. Comm'r of Soc. Sec.*, 18-CV-1298, 2020 WL 1861920, at \*5 n.5 (W.D.N.Y. Apr. 14, 2020) ("Gabapentin . . . is sometimes helpful in reducing fibromyalgia symptoms . . .") (citation omitted).

Similarly, as part of his analysis of Plaintiff's testimony that her polyneuropathy symptoms impaired her ability to walk, the ALJ referenced podiatry records stating that Plaintiff "was 100% better, and that she would only need to be seen on an annual basis." (T. 1351, 1593.) This reference, while technically accurate, is misleading. Plaintiff's podiatry records show that Plaintiff sought treatment for toe pain on her left foot that was diagnosed as capsulitis in May 2015—after the date last insured—and was advised to wear more comfortable shoes. (T. 1591, 1593.) Notes from subsequent podiatry appointments show that the capsulitis was resolved, or "100% better," but that her polyneuropathy symptoms, including lack of sensation, numbness, and tingling were still present. (T. 1591, 1593, 1595.)

Likewise, the ALJ emphasized Plaintiff's report during one appointment with Dr. Augustine that she had been working in her yard and lifting rocks, as evidence that contradicted

Plaintiff's reports of significant physical limitations.  (T. 193, 1347, 1351.)  To begin with, there is no indication that Plaintiff was able to perform such activities at the necessary rate of eight hours per day, for five days a week.  *Stoesser v. Comm'r of Soc. Sec.*, 08-CV-0643, 2011 WL 381949, at *6-7 (N.D.N.Y. Jan. 19, 2011) (Bianchini, M.J.) (plaintiff's daily activities did not support the ALJ's finding that plaintiff could perform sedentary work over an eight-hour workday in light of plaintiff's testimony that he could not sit for more than 30 minutes to an hour without standing up), *report-recommendation adopted by*, 2011 WL 381941 (N.D.N.Y. Feb. 3, 2011) (Sharpe, J.).  More importantly, the ALJ failed to reference the remainder of Dr. Augustine's progress note, in which Plaintiff described the radiating back pain that followed this gardening activity and grew worse over the next two weeks, requiring medical attention.  (T. 193.)

The ALJ also relied on Plaintiff's intermittent treatment relationship with her rheumatologist, Dr. Riccardi, as evidence that "supports the inference" that her fibromyalgia and neuropathy symptoms were stable during the relevant time period.  (T. 1349.)  The ALJ cites no evidence of such stability, and this Court has not found it in the medical record, despite a searching review.  During the relevant time period, Plaintiff visited other specialists, including a neurologist who described her condition as "slowly aggressive."  (T. 1351.)  It is also inconsistent with the medical record between 2010 and 2014, which reflect Plaintiff's progression from using a traditional cane, to being prescribed a quad cane, to being prescribed a mobility walker.  (T. 435, 553, 1319-1320.)

Furthermore, the ALJ's unsupported conclusion that the break in treatment from Dr. Riccardi reflects minimal or stable symptoms improperly fails to account for Plaintiff's testimony that she had seen the rheumatologist since the 1990s, until changes in her employer's

health insurance plan excluded him from coverage for an extended period.  (T. 550-551.)  She

resumed treatment with Dr. Riccardi in 2015, after another change in her insurance.  (T. 551.)

An ALJ must not draw an adverse inference from a claimant's failure to seek or pursue treatment

"without first considering any explanations that the individual may provide, or other information

in the case record, that may explain infrequent or irregular medical visits or failure to seek

medical treatment."  SSR 16-3p, 81 FR 14166-01 at 14170-14171, 2016 WL 1020935 (Mar. 16,

2016) ("[W]e will consider and address reasons for not pursuing treatment that are pertinent to

an individual's case."); *Callahan v. Berryhill*, 17-CV-4920, 2020 WL 7000732, at *21 (E.D.N.Y.

August 11, 2020) (ALJ erred in drawing a negative inference from plaintiff's failure to seek

orthopedic treatment without mentioning plaintiff's testimony that she could not afford such

treatment under her current insurance); *Hamilton v. Colvin*, 8 F. Supp. 3d 232, 240 (N.D.N.Y.

2013) (Scullin, J.) ("To the extent the ALJ used the lack of treatment as a basis for discounting

Plaintiff's testimony concerning the extent of his impairment, the ALJ was obliged to consider

whether the lack of treatment during that time period had another cause.").

     The ALJ is responsible for reviewing all the medical and other evidence before him,

resolving any inconsistencies therein, and making a determination consistent with the evidence

as a whole.  *See Bliss v. Colvin*, 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015)

(Sharpe, C.J.) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve

material conflicts where sufficient evidence provides for such."); *accord Petell v. Comm'r of

Soc. Sec.*, 12-CV-1596, 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014) (Kahn, J.).  Thus,

in formulating Plaintiff's RFC, the ALJ was not required to accept every limitation in the various

medical opinions nor craft an RFC mirroring a particular opinion.  *See Matta*, 508 F. App'x at 56

("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of

34

medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to

make an RFC finding that [is] consistent with the record as a whole.").  However, the ALJ's RFC

determination in this case is based upon a misapplication of the treating physician rule, a

selective lay interpretation of the medical evidence, and a faulty consideration of Plaintiff's

subjective testimony.  As a result, the ALJ's conclusion that Plaintiff could perform her past

relevant work and his ultimate finding that Plaintiff was not disabled were not supported by

substantial evidence.

### E.    Directed Finding of Disability and Remand for Calculation of Benefits

"Sentence four of Section 405(g) provides district courts with the authority to affirm,

reverse, or modify a decision of the Commissioner 'with or without remanding the cause for a

rehearing.'"  *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405[g]).

Where there are gaps in the administrative record or the ALJ has applied an improper legal

standard, the Second Circuit has indicated that remand for further development of the evidence is

warranted.  *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (internal citations omitted).

Thus, remand for further administrative proceeding is the overwhelmingly preferred course

where the administrative record contains gaps and further findings would "plainly help to assure

the proper disposition" of the claim.  *Glass v. Colvin*, 12-CV-1332, 2014 WL 5361471, at *6

(N.D.N.Y. Oct. 21, 2014) (Young, J.) (citing *Butts*, 388 F.3d at 385).

Plaintiff's primary argument in support of remand solely for calculation of benefits is that

further administrative proceedings will only cause further delay in the resolution of Plaintiff's

application.  In this case, the Appeals Council has remanded this matter to an ALJ twice, and

Plaintiff's SSDI application has been considered in three hearings by two different ALJs.  (T. 38-

57, 533-575, 600-604, 1366-1371, 1372-1391.)  Plaintiff's original application for benefits was

filed almost nine years ago, and Plaintiff has already begun receiving Social Security retirement

benefits while her application for disability benefits is pending.  (T. 1377.)  The Commissioner's

determination addresses only the question of whether Plaintiff was under a disability prior to her

date last insured on December 31, 2014.  (T. 1354.)  Thus, there is certainly merit to Plaintiff's

contention.  *See McClain v. Barnhart*, 299 F. Supp. 2d 309, 330 (S.D.N.Y. 2004) ("The lengthy

[nine-year] delay in the resolution of [plaintiff's] claim further persuades [the court] that the case

is properly disposed by remanding solely for the calculation of benefits.").

Another factor in favor of remand solely for calculation of benefits is the ALJ's failure to

follow the Appeals Council's remand order dated April 24, 2019, and by extension, Judge

Peebles' decision of January 31, 2018.  The regulations provide that, upon remand, an ALJ "shall

take any action that is ordered by the Appeals Council and may take any additional action that is

not inconsistent with the Appeals Council's remand order." 20 C.F.R. §§ 404.977(b).

Accordingly, reviewing courts have found that failure to comply with the Appeals Council's

remand order may be grounds for remand solely for calculation of benefits.  *See Dommes v.*

*Colvin*, 225 F. Supp. 3d 113, 124 (N.D.N.Y. 2016) (Suddaby, C.J.) ("[T]he Court will order

remand solely for calculation of benefits because the ALJ once again failed to follow the remand

order to follow the treating physician rule."); *Mortise v. Astrue*, 713 F. Supp. 2d 111, 120-24

(N.D.N.Y. 2010) (Kahn, J.) (remanding solely for calculation of benefits based on the ALJ's

failure to comply with the remand order to follow the treating physician rule).  That clearly is a

relevant factor in this case.

However, the factor that this Court finds most compelling is the most straightforward—

the strong and often uncontroverted evidence of Plaintiff's disability.  A remand for calculation

of benefits is warranted "when the record provides persuasive proof of disability and a remand

for further evidentiary proceedings would serve no purpose." *Dommes*, 225 F. Supp. 3d at 124

(quoting *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)); *see also Laventure v. Berryhill*,

17-CV-0443, 2018 WL 3727355, at *4 (N.D.N.Y. Aug. 6, 2018) (Kahn, J.).  No useful purpose

exists, for example, "[w]here the reversal 'is based solely on the [Commissioner's] failure to

sustain [her] burden of adducing evidence of the claimant's capability of gainful employment,'"

and the Commissioner would not be able to offer additional evidence in support of her position

during subsequent proceedings.  *Balsamo v. Chater*, 142 F.3d 75, 82 (2d Cir. 1998) (quoting

*Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983)); *see also Talanker

v. Barnhart*, 487 F. Supp. 2d 149, 160 (E.D.N.Y. 2007) (quoting *Butts*, 388 F.3d at 385 (2d Cir.

2004) ("[W]hen a court finds 'no apparent basis to conclude that a more complete record might

support the Commissioner's decision, [it may] opt[ ] simply to remand for a calculation of

benefits.").  In short, a court should reverse the Commissioner's decision and remand for a

calculation of benefits when "the record is 'sufficiently complete' and provides 'persuasive

evidence of total disability,' thus rendering further proceedings pointless."  *Manago v. Barnhart*,

321 F. Supp. 2d 559, 568 (E.D.N.Y.2004) (quoting *Williams v. Apfel*, 204 F.3d 48, 50 (2d Cir.

1999)).

       Here, two of Plaintiff's treating physicians offered comprehensive opinions during the

relevant period that Plaintiff's functional limitations were below the standard for sedentary work

due to her physical impairments.  (T. 428-430, 507-509, 795-798.)  The only contrary opinion

evidence from this time period is Dr. Ganesh's consultative examination report from October

2014, which the ALJ assigned "little weight" because it unconvincingly found that Plaintiff had

no limitations at all with regard to sitting, standing, or walking.  (T. 1349.)  Indeed, the ALJ

expressly recognized that "All of [the Augustine/Kreitzer] opinions support a conclusion, if

adopted in full, that plaintiff was unable to perform even sedentary work on a regular and sustained basis." (T. 1347.)

VE Festa's hearing testimony allows this Court to take the ALJ's statement one step further. In response to hypotheticals from the ALJ and Plaintiff's counsel, VE Festa indicated that sedentary work would be unavailable to Plaintiff if the ALJ had adopted any one of their record-supported opinions that (1) Plaintiff could only stand/walk for a total of two hours during the workday, (2) could only occasionally reach with their upper extremities, (3) would be off task more than twenty percent of the workday, or (4) would be absent more than four days per month.[6] (T. 1387-1390.) As described above, the ALJ fully developed the record, and still failed to marshal substantial evidence to suggest that the treating source opinions were entitled to less than controlling weight with regard to these issues. In addition, there is record evidence that Plaintiff required unusual workplace accommodations that allowed her time off task and away from the office during her last two years of employment. (T. 44, 549.) VE Festa testified that most employers would not tolerate such accommodations. (T. 1388.)

This Court thus finds that the record evidence, including properly weighted treating source opinions, make a finding of disability as of Plaintiff's alleged onset date of January 1, 2010, "inevitable" in this case. *Jennifer D. v. Saul*, 19-CV-0437, 2020 WL 2553102, at *7 (N.D.N.Y. May 20, 2020) (Mordue, J.) (remanding for calculation of benefits because "once proper weight is given to the restrictive opinion of Plaintiff's treating physician . . . a finding of disability is inevitable"). Accordingly, the Court remands this case solely for calculation of benefits. *See, e.g., Rivera*, 923 F.2d at 970 (remanding for calculation of benefits where "a

---

[6]     In contrast, VE Festa testified that the lifting restrictions described by Dr. Augustine and Dr. Kreitzer would not significantly diminish the number of sedentary jobs available. (T. 1389.)

review of the record fails to reveal any evidence which would support a finding that [claimant] was capable of performing substantial gainful work which was available in the national economy"); *Vargas v. Sullivan*, 898 F.2d 293, 296 (2d Cir. 1990) (remanding for calculation of benefits where "there was an infinitesimal likelihood that employment of any kind would be available" for claimant); *Gallisaw v. Comm'r of Soc. Sec.*, 296 F. Supp. 3d 484, 500 (E.D.N.Y. 2017) (remand for calculation of benefits was proper in case where evidence overwhelmingly supported conclusion that Plaintiff had the RFC to perform a very small range of sedentary work, and the vocational expert clearly stated that such an individual could not perform any unskilled occupations with jobs that exist in the national economy); *Cordero v. Colvin*, 15-CV-0845, 2016 WL 6829646, at *5 (W.D.N.Y. Nov. 21, 2016) (remanding for calculation of benefits where "the record is complete, and further administrative proceedings would serve no purpose"); *Yates v. Colvin*, 959 F. Supp. 2d 233, 242 (N.D.N.Y. 2013) (Hurd, J.) (remanding for calculation of benefits where treating physicians assessed limitations that precluded work and their opinions should have been given controlling weight); *Boylan v. Astrue*, 32 F. Supp. 3d 238, 252 (N.D.N.Y. 2012) (Bianchini, M.J.) (remanding for calculation of benefits where the ALJ erred in applying treating physician rule and the record contained persuasive evidence of disability).

 **ACCORDINGLY**, it is

 **ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **GRANTED**; and it is further

 **ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

 **ORDERED** that Defendant's decision denying Plaintiff disability benefits is **REVERSED**, and it is further

**ORDERED** that this matter is **REMANDED FOR CALCULATION AND PAYMENT OF BENEFITS**.


Dated: March 26, 2021
         Binghamton, New York

_____

Hon. Miroslav Lovric
United States Magistrate Judge